Filed 6/14/24  P. v. Cervantes CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUBEN CERVANTES,<br><br>    Defendant and Appellant. | B330271<br><br>(Los Angeles County<br>Super. Ct. No. BA174590)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on May 15, 2024, is modified as follows:

On page 2, line six of the first full paragraph, in the parenthetical immediately after the words "committed multiple murders", delete "§ 192" and replace it with "§ 190.2".

On page 2, line 3 of the second full paragraph, delete "1203.1" and replace it with "1203.01".

At the top of page 5, delete the heading, "***Due Process***", and replace the heading with "***Equal Protection***".

On page 5, line 6 of the first full paragraph, end the paragraph after the first sentence, and then insert a new paragraph as follows:

"Cervantes's argument that there is not a rational basis for distinguishing between juveniles under the age of 18 who are serving LWOP sentences and youthful offenders between the ages of 18 and 25 who are serving LWOP sentences has been rejected by every Court of Appeal that has considered it. (*People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1079; *People v. Sands* (2021) 70 Cal.App.5th 193, 204; *In re Murray* (2021) 68 Cal.App.5th 456, 463–465; *People v. Morales* (2021) 67 Cal.App.5th 326, 347; *People v. Jackson* (2021) 61 Cal.App.5th 189, 196–198; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779–780.) In light of the United States Supreme Court precedent holding that there is a rational basis for treating juveniles and nonjuveniles differently in the context of criminal sentencing, we see no reason to diverge from the other Courts of Appeal. (*Miller v. Alabama* (2012) 567 U.S. 460, 471 ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood"].)"

Following this newly inserted paragraph, begin the next paragraph with the sentence that starts "The issue", and after the words "The issue" and before the words "is one that had divided the Courts of Appeal," insert the following language: "of

whether there is a rational basis for distinguishing between young adult offenders between the ages of 18 and 25 years old who are serving LWOP sentences and young adult offenders serving non-LWOP sentences".

On page 8, line 3 in the sentence under the heading "DISPOSITION", delete "1203.1" and replace it with "1203.01".

The petition for rehearing filed on May 30, 2024, by defendant and appellant is denied.

There is no change in judgment.

MOOR, Acting, P. J.       KIM, J.       LEE, J.*

---

*Judge of the Superior Court of San Bernardino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/15/24  P. v. Cervantes CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUBEN CERVANTES,<br><br>Defendant and Appellant. | B330271<br><br>(Los Angeles County<br>Super. Ct. No. BA174590) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Noah P. Hill, Deputy Attorneys General for Plaintiff and Respondent.

———————————

In 1999, the jury found Ruben Cervantes guilty of two counts of first degree murder (Pen. Code[1], § 187; counts 2 & 3), and five counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a) & 664; counts 1, 4, 5, 6, & 7). The jury found true the special circumstance allegations that Cervantes committed multiple murders (§ 192, subd. (a)(3)), personally used a firearm in the commission of the offenses (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b)–(d)), and personally inflicted great bodily injury upon the victim in count 1 (§ 12022.7, subd. (a)). The jury also found true the allegation that the offenses were gang-related. Cervantes was 23 years old when he committed the crimes. He was sentenced to life without parole (LWOP).

In 2023, Cervantes moved for a hearing to preserve evidence for use at a future youth offender parole hearing pursuant to section 1203.1. (*People v. Franklin* (2016) 63 Cal.4th 261; *In re Cook* (2019) 7 Cal.5th 439.) The trial court denied the motion on the ground that youth offender parole hearings are not available for people serving LWOP sentences for an offense committed after the offender attained 18 years of age. (§ 3051, subd. (h).)

On appeal, Cervantes contends that excluding from youth offender parole consideration defendants like himself, who were between the ages of 18 and 26 years old at the time of the offenses for which they were sentenced to LWOP, violates the constitutional right to equal protection of the laws and the prohibition on cruel and unusual punishment.

We affirm the trial court's order.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## FACTS

At the time of the offenses, Cervantes was a member of a street gang known as 36th Street. The 36th Street gang was "at war" with the Clanton gang. Members of the Clanton gang had been shooting at 36th Street members. Cervantes told a large group of 36th Street members that he believed it was time to retaliate. Cervantes was armed with a nine-millimeter handgun. He said that he wanted to shoot Clanton members. Cervantes and other 36th Street gang members drove into Clanton territory looking for targets.

A Clanton member rode his bicycle in front of the car that defendant was riding in. One of the 36th Street gang members said "36th Street" and the person on the bicycle responded, "Clanton." Cervantes and another gang member fired shots at the person on the bicycle, hitting him in the leg and the ankle.

That evening around 9:00 p.m., Elizabeth Juarez, who was hosting a party for a friend who was a Clanton gang member, heard gunshots and saw a car go by her house. The front passenger was shooting and someone yelled "36th Street." Jaurez's aunt, who was standing on the corner, was shot, as was a neighbor. The car was the same make and model of the car Cervantes was riding in earlier that day when he shot the person on the bicycle.

By 4:00 a.m. the next morning, there were between 80 and 100 people congregating in Juarez's back yard. Many of the party-goers were Clanton gang members. Yesenia Zaldivar was in Jaurez's backyard when she heard between eight and thirteen

3

shots fired.  A bullet skinned Zaldivar's shoulder.  Five other people at the party were shot; two of those people were killed.

The next day Cervantes told a fellow 36th Street member that he had jumped over a wall and started shooting his nine-millimeter handgun at the people attending Juarez's party.  He said that he " 'took care of them fools.' "

## DISCUSSION

"California's youth offender parole statute offers opportunities for early release to certain persons who are incarcerated for crimes they committed at a young age. (§§ 3051, 4801.)  When it was first enacted in 2013, the statute applied only to individuals who committed their crimes before the age of 18; the purpose of the statute was to align California law with then-recent court decisions identifying Eighth Amendment limitations on life without parole sentences for juvenile offenders. In more recent years, however, the Legislature has expanded the statute to include certain young adult offenders as well.  Under the current version of the statute, most persons incarcerated for a crime committed between ages 18 and 25 are entitled to a parole hearing during the 15th, 20th, or 25th year of their incarceration. (§ 3051, subd. (b).)  But not all youthful offenders are eligible for parole hearings.  The statute excludes, among others, offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18. (*Id.*, subd. (h).)" (*People v. Hardin* (2024) 15 Cal.5th 834, 838 (*Hardin*).)

4

***Due Process***

Cervantes first contends, as he did in the trial court, that section 3051 violates federal and state constitutional guaranties of equal protection by excluding from eligibility for youth offender parole hearings persons serving LWOP sentences for crimes committed when they were between 18 and 25 years of age. The issue is one that had divided the Courts of Appeal, but after briefing in this case was complete, the California Supreme Court resolved the conflict by holding that section 3051 does not violate equal protection. (*Hardin*, *supra*, 15 Cal.5th at p. 839 ["Hardin has not demonstrated that the Legislature acted irrationally in declining to grant the possibility of parole to young adult offenders convicted of special circumstance murder, even as it has granted youth offender hearings to young adults convicted of other offenses."].) Although the court left open the possibility of "other challenges to the distinctions drawn by the special circumstances statute based on a more robust record or a more focused as-applied inquiry" (*id*. at p. 862), here Cervantes has not made an as-applied challenge based on the special circumstances found true by the jury against him. *Hardin* is controlling, and Cervantes's contention necessarily fails.

***Cruel and Unusual Punishment***

Cervantes next contends that the amendments to section 3051 that provide youth offender parole hearings for persons serving non-LWOP sentences who committed their controlling offenses between the ages of 18 and 25 years old rendered his

LWOP sentence cruel and unusual punishment under article I, section 17 of the California Constitution.  We reject this contention as well.

"A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'  (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted [(*Lynch*)].)  It requires that we 'examine the circumstances of the offense' and the defendant in determining whether the 'the penalty imposed is "grossly disproportionate to the defendant's culpability." ' [Citation.]  We assess three factors in making this determination:  (1) the nature of the offense and the offender, and the degree of danger posed to society; (2) a comparison with sentences for more serious offenses under California law; and (3) a comparison with sentences imposed by other states for the same offense. (*Lynch*, at pp. 425– 427.)" (*People v. Edwards* (2019) 34 Cal.App.5th 183, 191.)

Whether a punishment is cruel or unusual in violation of the California Constitution under the legal principles set forth in *Lynch*, supra, 8 Cal.3d 410, 424 through 427, "presents a question of law subject to independent review; it is 'not a discretionary decision to which the appellate court must defer.' [Citation.]" (*People v. Felix* (2003) 108 Cal.App.4th 994, 1000.) The reduction of a sentence based on the determination it is cruel or unusual under the California Constitution " 'is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels.' [Citation.]" (*Ibid.*)  Furthermore, such a reduction " ' "must be viewed as representing an exception rather than a general rule" ' " and " '[i]n such cases the punishment is reduced because

6

the Constitution compels reduction, not because a trial court in its discretion believes the punishment too severe.' [Citation.]" (*Ibid.*)

Cervantes acknowledges that his sentence "may not meet the three-part test set forth in *Lynch*, *supra*," and does not attempt to argue any of the factors set forth above. Instead, he asserts that, because he was 23 years old at the time he committed the offenses, he—like any other person under the age of 26—was immature and less culpable than a person 26 years old or older, regardless of the crimes he committed. Cervantes argues that his reduced culpability essentially renders the circumstances of the crimes and the fact that he committed two murders irrelevant. This is simply incorrect. The number and nature of the crimes Cervantes committed cannot be ignored—article I, section 17 requires that we " 'examine the circumstances of the offense' and the defendant.' " (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 191.)

In this case, Cervantes told others that he wanted to shoot members of a rival gang in retaliation for earlier shootings committed by its members. He jumped over a wall and fired between eight and thirteen shots into a group of party-goers, fatally wounding two of his victims. The next day he bragged that he " 'took care of them fools.' " Even taking into account his diminished culpability as a 23 year old, Cervantes's crimes are such that the sentence does not exceed the constitutional limit.

7

## DISPOSITION

We affirm the trial court's order denying Cervantes's motion for a youth offender parole hearing pursuant to Penal Code section 1203.1.

NOT TO BE PUBLISHED.


MOOR, Acting, P. J.


WE CONCUR:



KIM, J.



LEE, J.*

---

*Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8